UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAZINA KING AND RIA KING,

    *Plaintiffs*,

v.

CALIBER HOME LOANS, INC.,

    *Defendant*.

Civil Action No. 15-2061 (RDM)

## MEMORANDUM OPINION

Plaintiffs Lazina and Ria King ("the Kings") filed this suit against defendant Caliber Home Loans, Inc. ("Caliber") on November 25, 2015, alleging a series of claims arising out of Caliber's efforts to foreclose on their home in Oxon Hill, Maryland. *See* Dkt. 1 (Compl.). Now before the Court is Caliber's motion to dismiss the Kings' complaint on numerous grounds, including for lack of venue under 28 U.S.C. § 1391(b).[1] Dkt. 4-1 at 7–8. Also before the Court is the Kings' motion to strike Caliber's motion to dismiss under Federal Rule of Civil Procedure 12(f). Dkt. 5.

For the reasons explained below, the Court concludes that venue is improper in this district and that it will, in the interest of justice, transfer the case to the United States District Court for the District of Maryland for further proceedings. Because venue is not proper in this Court, the Court will not reach the remaining issues raised in Caliber's motion to dismiss.

---

[1] Caliber also moves to dismiss the Kings' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and because it is barred by claim preclusion and the *Rooker-Feldman* doctrine. *See* Dkt. 4-1 at 5–7, 8–9.

Finally, the Court will deny the Kings' motion to strike Caliber's motion to dismiss and will, instead, treat the motion to strike as an opposition.

## I.    BACKGROUND

Plaintiffs Lazina and Ria King purchased a home in Oxon Hill, Maryland, in April of 1996.[2] Dkt. 1 at 9. In January of 2014, they received notification that the "servicing of [their] mortgage loan" would be transferred from Beneficial Financial I Inc. to Caliber Home Loans, Inc. *Id.* at 12–13.

At first, the Kings "never really had an issue paying the mortgage." *Id.* at 9. Lazina King "fell sick" in 2013, however, and she twice required "emergency surger[ies]" that necessitated repeated trips to the hospital. *Id.* at 15. In an effort to "get [their] bills . . . back in order," the Kings "reached out" to Caliber in April 2014 for a "little help by way of a loan modification," and they faxed "a list of documents" to Caliber to "start the loan modification process." *Id.* at 3, 15. After calling Caliber to "inquire [about] the status of their modification application," the Kings were informed that "their file was closed because [Caliber] could not contact the [Kings] because there was a cease and desist order listed on [their] account." *Id.* at 3. The Kings allege that they "never issued a cease and desist order" and that Caliber has never "provided proof that such [an] order exists." *Id.*

---

[2] It is unclear from the face of the Kings' complaint if Lazina King and Ria King purchased the home as co-owners in 1996, or if the mortgage was solely in Lazina King's name. The complaint alleges, for example, that "Plaintiff [singular] acquired" the property in 1996 and made regular payments until "Plaintiff [singular] fell ill." Dkt. 1 at 9. A letter written by Lazina King to Caliber, which is attached to the complaint, states that Lazina is the "homeowner of [the] residence" and seeks "a loan modification" because she "fell sick," but the letter is signed by both Lazina and Ria King. Dkt. 1 at 15. For its part, Caliber repeatedly sent mortgage-related communications to both of the Kings. *See* Dkt. 1 at 16–17, 21. For present purposes, the Court need not determine whether both of the Kings, or only Lazina, has standing to pursue this matter.

2

The Kings' "file was re-opened" in May 2014 and, after submitting "additional documentation" to Caliber, they received a "Final Loss Mitigation Affidavit" from Caliber on June 11, 2014. *Id.* at 4, 16.  The affidavit notes that the Kings "ha[d] not been solicited due to [a] cease and desist listed on [their] file," but that they had "call[ed] in to follow up on modification" and "submitted documents to be considered for review." *Id.* at 16.  Although the affidavit mentions that the Kings were "still missing" several documents necessary to consider the modification request, it also explains that the Kings were still "able to apply for in-house modification" and other "repayment plan options." *Id.*  After another telephone call to Caliber on July 15, 2014, the Kings were "able to get the file open again," and Caliber followed-up the same day with a letter listing the "specific documents" from the Kings that were still needed. *Id.* at 6, 17.  The Kings allege that they "faxed over the required documents" on July 30, 2014, *id.* at 6, 9–10, 18–20, but, instead of receiving "news" from Caliber "regarding the modification," they "received a letter" on August 22, 2014, announcing an "impending sale" of their home at a "public auction on September 9, 2014," *id.* at 6, 21.  The Kings' complaint does not describe the events that occurred after they received the August 22 letter in much detail.  It does, however, allege that Caliber instituted a "foreclosure case" and that "Plaintiff [is] currently petition[ing] the Maryland Court of Special Appeals in regards" to that case. *Id.* at 9.

The Kings filed suit in this Court on November 25, 2015.  Dkt. 1.  Their complaint alleges eight causes of action, including: (1) Failure to Provide Honest Services as a Mortgage Servicer; (2) Violation of the Dodd-Frank Act of 2014; (3) Violation of the Real Estate Settlement Procedures Act (Reg. X); (4) Violation of the Truth in Lending Act (Reg. Z); (5) Negligence; 6) Emotional Distress; 7) Violation of the Fair Debt Collection Practices Act; and, 8) Mental Anguish.  Dkt. 1 at 7–9.  Caliber filed a timely motion to dismiss, Dkt. 4, to which the

Kings responded with a "Motion to Strike Defendants' Motion to Dismiss" "pursuant to Rule 12(f)," Dkt. 5 at 1.  The next day, the Court issued an Order noting that it "may construe" the Kings' Motion to Strike as "a response to Caliber's Motion," and permitting the Kings to "supplement their Motion to Strike or to file a separate opposition to Caliber's motion."  Dkt. 6 at 1–2.  The Kings filed a timely opposition brief, Dkt. 7, and Caliber replied, Dkt. 8.

## II.      LEGAL STANDARD

Federal law requires that plaintiffs bring suit "in the proper venue" to "ensure[] that a district with some interest in the dispute or nexus to the parties adjudicates the plaintiff's claims."  *Hamilton v. JPMorgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015).  "Venue is proper in the district where (1) a defendant resides; (2) the events giving rise to the suit occurred; or (3) if venue would not be proper in any district for those reasons, wherever the defendants are subject to personal jurisdiction."  *Hamilton*, 118 F. Supp. 3d at 333 (citing 28 U.S.C. § 1391(b)).

Pursuant to Federal Rule of Civil Procedure 12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems appropriate.'"  *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 96 (D.D.C. 2012) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)).  In order to "prevail on a motion to dismiss for improper venue," a "defendant must present facts that will defeat the plaintiff's assertion of venue," but the "burden . . . remains on the plaintiff to prove that venue is proper when an objection is raised, since it is the plaintiff's obligation to institute the action in a permissible forum."  *Roland v. Branch Banking & Trust Corp.*, 149 F. Supp. 3d 61, 67 (D.D.C. 2015) (internal quotation marks omitted).  In considering a motion to dismiss for improper venue, the Court must accept the *factual* allegations of the complaint regarding venue as true and

must draw all reasonable inferences in favor of the plaintiff.  *See James v. Verizon Servs. Corp.*, 639 F. Supp.2d 9, 11 (D.D.C. 2009).  Moreover, "[t]he [C]ourt may resolve the motion on the basis of the complaint alone, or, as necessary, [it may] examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff." *McCain v. Bank of America*, 13 F. Supp.3d 45, 51 (D.D.C. 2014).

If the Court concludes that venue is improper, it must then decide whether to dismiss the action or to transfer the case to a district where it could initially have been instituted.  *See Hamilton*, 118 F. Supp. 3d at 333 (citing 28 U.S.C. § 1406(a)).  As the D.C. Circuit has observed, "[r]efusal to transfer spells the end to the action, while transfer would not prejudice the defendants' position on [the] merits," and "[t]he Supreme Court has inferred a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication . . . on the merits.'"  *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962)).  "Included among these 'procedural obstacles' is 'lack of personal jurisdiction.'" *Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, Civ. No. 14-380 at 39 (D.D.C. Sept. 26, 2016) (quoting *Sinclair*, 711 F.2d at 294).  "Dismissal, instead of transfer, is appropriate when the plaintiff's claims suffer from significant substantive deficiencies," but ultimately, "[w]hether to dismiss or transfer the case is committed to the sound discretion of the district court." *Hamilton*, 118 F. Supp. 3d at 333.

### III.   ANALYSIS

Although Caliber raises various challenges to the Kings' complaint, the Court starts with the threshold question of whether venue is proper in this district.  In addressing this issue, the Court is mindful of the fact that the Kings are proceeding *pro se* and that, accordingly, it must

construe their "filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). At the same time, however, it is the plaintiff's burden to establish venue, *see McCain*, 13 F. Supp. 3d at 51, and the Court cannot relieve the Kings of this burden merely because they are acting without the benefit of counsel. The Court will, accordingly, first consider the basis for venue alleged in the complaint and will then consider whether any other basis for establishing venue is apparent from the materials currently before the Court. Ultimately, however, the burden of establishing that venue is proper must remain with the Kings.

**A.    Venue in the District of Columbia**

The question whether venue is proper "is generally governed by 28 U.S.C. § 1391," which "states that '[e]xcept as otherwise provided by *law* . . . this section *shall* govern the venue of *all civil actions* brought in district courts of the United States.'" *Atl. Marine Constr. Co., Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568, 577 (2013) (quoting 28 U.S.C. § 1391(a)(1)) (emphasis in original). Accordingly, "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper," but, 'if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*

  1.   *"Substantial Part"*

To the Kings' credit, they expressly address the question of venue in their complaint, and they allege that "[v]enue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2)." Dkt. 1 at 2. That paragraph provides that a civil action may be brought in "a judicial district in which [1] a substantial part of the events or omissions giving rise to the claim occurred, or [2] a substantial part of the property that is the subject of the action is situated." § 1391(b)(2). Here, however,

the Kings have failed to allege any facts or to adduce any evidence suggesting that either prong of this test is satisfied.

The Kings apparently reside in Oxon Hill, Maryland, Dkt. 1 at 15, and all of the correspondence attached to the complaint is between them and entities in Florida or Oklahoma, Dkt.1 at 12–13, 17. There is no evidence that any relevant event or omission occurred in the District of Columbia. Moreover, and most significantly, the complaint plainly and repeatedly shows that the "property that is the subject of the action"—their home—is "situated" in Oxon Hill, Maryland. *See* Dkt. 1 at 5–6, 8–9, 12, 15–17, 21–22. Thus, it is clear from the face of the complaint that § 1391(b)(2) does not provide a basis for venue in the District of Columbia. *See Roland*, 149 F. Supp. 3d at 67–68 (finding that, because the plaintiff's complaint "allege[d] that the [foreclosed] property [was] located in Maryland, and the foreclosure proceeding at issue took place in Maryland," the plaintiff had not shown that a "substantial part" of his claims "occurred in the District of Columbia").

2. *Residency*

Although the Kings have not pressed any alternative arguments, the Court further concludes that § 1391(b)(1) does not provide a basis for establishing venue in the District of Columbia. That paragraph provides that a civil action may brought in "a judicial district in which any defendants resides, if all defendants are residents of the State in which the district is located." § 1391(b)(1). The complaint identifies a New Hampshire address for Caliber, *see* Dkt. 1 at 1, and the exhibits attached to the complaint show that Caliber used an Oklahoma mailing address, *see id.* at 13, 17. There is no allegation or evidence that Caliber has any connection to the District of Columbia. In response to Caliber's motion to dismiss for improper venue, moreover, the Kings affirmatively assert that Caliber "is headquartered in Texas." Dkt. 7 at 13.

7

The Kings could establish Caliber's "residency" in the District of Columbia "for venue purposes" by showing that "[Caliber] is subject to the court's personal jurisdiction with respect to the civil act in question." § 1391(c)(2). That is, the Kings' choice of venue would be proper if courts in the District of Columbia have personal jurisdiction over Caliber. There are two District of Columbia statutes that confer general jurisdiction and one that confers specific jurisdiction. *See Johns*, 887 F. Supp. 2d at 97–98. The Court will address each in turn.

First, under D.C. Code § 13–422, a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia." Here, the Kings have not alleged or proffered any facts that might satisfy this test. Indeed, they "actually [do] the opposite" by using a New Hampshire address for Caliber on the first page of their complaint and by "admitting that [Caliber] is headquartered" in Texas in their opposition brief. *Johns*, 887 F. Supp. 2d at 97. Once a defendant raises a specific objection to venue, "the burden is on the plaintiff to establish that the chosen district is a proper venue." 14D Wright & Miller et al., *Federal Practice and Procedure* § 3826 (4th ed. 2016). Because Caliber has convincingly challenged the basis for venue asserted in the complaint, the Kings bear the burden of showing that venue is proper, yet they have offered no basis to infer that Caliber is subject to § 13-422 jurisdiction in the District of Columbia.

Similarly, they have failed to offer any reason to infer that Caliber "do[es] business in the District [of Columbia]" within the meaning of D.C. Code § 13–334. Under § 13–334, "a foreign corporation which carries on a consistent pattern of regular business activity within the jurisdiction is subject to the general jurisdiction of [the District of Columbia's] courts, upon proper service, and not merely for suits arising out of its activity in the District of Columbia."

8

*AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981) (per curiam).  Thus, among other limitations, "[i]f a company is not served in the District of Columbia, it cannot be subject to general jurisdiction under § 13–334."  *Johns*, 887 F. Supp. 2d at 97.  Here, however, the Affidavit of Service shows that the Kings served their complaint on Caliber's law firm in Maryland.  *See* Dkt. 3 at 2.  Accordingly, "general jurisdiction under § 13–334 cannot be established," *Johns*, 887 F. Supp. 2d at 98, and the Court need not inquire as to whether Caliber carries on regular business in the District of Columbia.

Finally, the Kings could show that the Court has specific jurisdiction over Caliber under D.C. Code § 13–423, which allows a "District of Columbia court [to] exercise personal jurisdiction over a person . . . transacting any business in the District of Columbia" or "causing tortious injury in the District of Columbia" that gives rise to the claims at issue.  But as explained above, there is no allegation or evidence that anything relevant to the Kings' claims occurred in the District of Columbia.  The Kings' home is located in Maryland, they live in Maryland, and they negotiated and corresponded with Caliber from Maryland.  They do not allege that Caliber sold them their mortgage from an office in the District of Columbia, nor do they claim that they sent payments or documents to a Caliber office in the District of Columbia.  Because the Kings have not identified a single allegation that connects their claims against Caliber to the District of Columbia, the Court concludes that the Kings have not established that this Court has specific jurisdiction over Caliber under § 13–423.

3.  *"Catch-All"*

The third paragraph of 28 U.S.C. § 1391(b) provides that, if "there is no district in which an action may otherwise be brought as provided in this section," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction."  But venue is

unavailable under § 1391(b)(3) for two reasons. First, as just discussed, the Kings have not provided any basis to believe that courts in the District of Columbia have personal jurisdiction over Caliber. *See supra* 7–9. Second, there *is* a "district in which an action may otherwise be brought"—the District of Maryland. The Kings' home is located in Maryland and the foreclosure proceedings took place in Maryland, "which, pursuant to 28 U.S.C. § 1391(b)(2), makes the District of Maryland a proper venue for [the Kings'] claims." *Roland*, 149 F. Supp. 3d at 68.

The Court, for these reasons, determines that venue in the United States District Court for the District of Columbia is improper.

**B.     Dismissal or Transfer**

"Under 28 U.S.C. § 1406(a), the district court shall dismiss an action filed in an improper venue, or, if it is in the interest of justice, transfer such case to any district in which it could have been brought."[3] *McCain*, 13 F. Supp. 3d at 55. The "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review," *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001), but the "decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court," *Naartex Consulting*, 722 F.2d at 789.

---

[3] As explained above, although the Court doubts that it has personal jurisdiction over the defendant, "this action may be transferred nevertheless to a proper venue." *Atwal v. Lawrence Livermore Nat'l Sec., LLC*, 786 F. Supp. 2d 323, 327 (D.D.C. 2011); *see also Goldlawr*, 369 U.S. at 466 ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *Naartax Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) ("A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants.").

The Court determines that it is in the interest of justice to transfer this case to the United States District Court for the District of Maryland. Judge Contreras's decision in *Roland v. Branch & Trust Corp.* is instructive. There, like here, the defendant "d[id] not address whether transferring venue would be appropriate . . . or offer any reason for the Court to depart from the typical practice of transferring a case for improper venue, rather than dismissing it." *Roland*, 149 F. Supp. 3d at 68–69; *see also* Dkt. 4-1 at 7–8; Dkt. 8 at 1. Just as in *Roland*, the Kings' complaint has been pending in this Court for a substantial period of time. 149 F. Supp. 3d at 69. And like in *Roland*, the Court finds that "there would be no prejudice to either party in ordering a transfer." *Id.* All in all, the Court agrees with the conclusion reached in *Roland*: "[I]t would be more efficient and economical to transfer the case to the District of Maryland, rather than force [the Kings], . . . *pro se* plaintiff[s], to re-file and re-serve [their] Complaint in another District." *Id*.

Accordingly, the Court will transfer the Kings' case to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1406(a).

**C.   Remaining Motions**

Because the Court concludes that venue is not proper in this district, it will not address the remaining grounds for dismissal raised in Caliber's motion. In addition, the Kings have moved to strike Caliber's motion to dismiss. For purpose of considering Caliber's motion to dismiss for lack of venue, the Court has concluded that the Kings' motion to strike should be treated as an opposition and declines to strike Caliber's motion.[4]

---

[4] Motions are "'outside of the pleadings' and are not subject to being stricken" under Rule 12(f). *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52–53 (D.D.C. 2013) (quoting Wright & Miller at al., *Federal Practice & Procedure* § 1380 (3d ed. Supp. 2012)).

**CONCLUSION**

For the reasons discussed above, the Court concludes that venue in not proper in the District of Columbia and that this action, accordingly, should be transferred pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the District of Maryland.  The Kings' motion to strike Caliber's motion to dismiss is denied and, instead, the Court has treated that motion as an opposition to Caliber's motion to dismiss.

A separate order will issue.

>/s/ Randolph D. Moss
> RANDOLPH D. MOSS
> United States District Judge

Date:  September 28, 2016